UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGNITY HEALTH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILL LIGHTBOURNE, et al.,<br><br>    Defendants. | **ORDER GRANTING CONSOLIDATED MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Case No. 20-cv-00212-SK<br><br><br>Regarding Dkt. No. 45 |
| SAN JOAQUIN COMMUNITY HOSP., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILL LIGHTBOURNE, et al.,<br><br>    Defendants. | Case No. 20-cv-01301-SK<br><br>Regarding Dkt. No. 37 |
| ST. VINCENT MEDICAL CTR., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILL LIGHTBOURNE, et al.,<br><br>    Defendants. | Case No. 20-cv-1771-SK<br><br>Regarding Dkt. No. 39 |

The instant consolidated motion for partial judgment on the pleadings pertains to three cases which have been consolidated for pretrial purposes. The lead case, *Dignity Health, et al. v. Will Lightbourne*, et al., 20-00212-SK ("*Dignity Health*"), was removed from San Francisco County Superior Court on January 10, 2020. (Dkt. 1.)[1] *San Joaquin Community Hospital, et al.,*

---

[1] The docket numbers cited in this Order refer to the docket in the lead case, unless otherwise noted.

*v. Will Lightbourne, et al.*, 20-01301-SK ("*San Joaquin*"), was removed from San Francisco County Superior Court on February 24, 2020. (*San Joaquin*, Dkt. 1.) *St. Vincent Medical Center, et al., v. Will Lightbourne, et al.*, 20-01771-SK ("*St. Vincent*"), was removed from San Francisco County Superior Court on March 12, 2020. (*St. Vincent*, Dkt. 1.) On March 18, 2020, the Court related the three cases. (Dkt. 15.) On December 11, 2020, the Court consolidated the three cases for pretrial purposes. (Dkt. 40.) In that Order, the Court permitted the filing of an amended, consolidated Petition and Complaint, (Dkt. 43, "Consolidated Complaint") and an amended answer (Dkt. 42, "Amended Answer"). All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (Dkts. 9, 10; *San Joaquin* Dkts. 8,11; *St. Vincent* Dkts. 8, 11.)

Defendants Will Lightbourne, Raul Ramirez, Bruce Lim, and the California Department of Healthcare Services ("Defendants") filed a consolidated motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on December 21, 2020. (Dkt. 45.) Plaintiffs Dignity Health, San Joaquin Community Hospital, St. Vincent Medical Center, *et al.* ("Plaintiffs") oppose the motion. (Dkt. 51.) The Court heard oral argument on the motion on March 2, 2021. (Dkt. 57.) The parties each submitted supplemental briefing providing additional case citations. (Dkts. 58, 59.) Having considered the submissions of the parties, the relevant legal authorities, and the record in the case, and having had the benefit of oral argument, the Court HEREBY GRANTS Defendants' motion for partial judgment on the pleadings and DISMISSES the cases for lack of subject matter jurisdiction, for the reasons set forth below.

## BACKGROUND

**A.   Factual Summary.**

Plaintiffs are a series of 24 California healthcare entities, including hospitals and the nonprofit and for profit corporations that run them. (Dkt. 43 ¶¶ 9-25.) Defendants are Will Lightbourne, the Direct of the California Department of Health Care Services, named in his official capacity only, Raul Ramirez, Chief of the California Department of Health Care Services Office of Health Information and Technology, named in his official capacity only, Bruce Lim, Deputy Director of the California Department of Health Care Services Audits and Investigations

2

Branch, named in his official capacity only, and the California Department of Health Care Services itself (the "Department"). (*Id.* ¶¶ 26-29.)

Plaintiffs bring suit based on Defendants' interpretation and application of the federal Health Information Technology for Economic and Clinical Health ("HITECH") Act of 2009, 42 U.S.C. § 1396b(t). (*Id.* ¶ 1.) The HITECH Act encouraged healthcare providers to adopt electronic healthcare records ("EHR") by providing incentive payments to providers, including hospitals, who upgraded to EHR systems. (Dkt. 43 ¶ 1.) The HITECH Act allowed states to develop the particular procedures for participation in the EHR incentive program through their existing Medicaid Programs, subject to approval by the federal Center for Medicaid and Medicare Services ("CMS"). (*Id.*); Cal. Welf. & Inst. Code § 14046.1(a). The California plan implementing the HITECH Act could, subject to federal approval:

> (1) Identify and establish the planning, policies, and procedures required to operationalize the Medi-Cal Promoting Interoperability Program.
>
> (2) Specify the criteria for enrollment, eligibility, and data collection.
>
> (3) Specify timeframes for technology modifications.
>
> (4) Specify the process for provider outreach and department coordination with established regional extension centers in the state, established to provide technical support to providers.
>
> (5) Establish the audit and appeals processes.
>
> (6) Participate in the National Level Registry.

Cal. Welf. & Inst. Code § 14046.1(b).

The Department developed a program for implementing the HITECH Act called the Medi-Cal EHR Incentive Program. (Dkt. 43 ¶ 1.) Beginning in 2011, healthcare providers could qualify for the incentive payments by submitting attestations that they met the requirements of the HITECH Act, including adoption of an EHR system and meaningful use. (*Id.* ¶ 39.) The HITECH Act prescribes a formula for calculating the amounts of incentive payments to qualifying hospitals. (*Id.* ¶ 41); 42 U.S.C. § 1396b(t)(5); 42 C.F.R. § 495.310(g). Upon receiving the appropriate attestations, states, including California through the Department, issued incentive payments to qualifying providers. (*Id.* ¶ 40.) However, all funds paid were federal funds. (*Id.* ¶

3

36); 42 U.S.C. § 1396b(a)(3)(F). Plaintiffs participated in this program, spending millions to upgrade their systems, submitting attestations, and qualifying for and receiving incentive payments as a result. (*Id.* ¶ 2.)

After incentive payments had issued to Plaintiffs, the Department conducted audits of the EHR Incentive Program and sought to reclaim incentive payments made to Plaintiffs on the basis that their attestations did not comply with the required formula. (*Id.* ¶¶ 3-5.) Plaintiffs contend that they strictly followed guidance and methodology issued by the Department to input data that formed the basis for their original incentive payments. (*Id.* ¶ 5.) The Department audit found that Plaintiffs did not use the correct data in calculating the payments and therefore the Department seeks to recover excess payments made under Plaintiffs' calculations. (*Id.*)

**B.     Statutory Framework.**

CMS implemented the Medicare and Medicaid EHR programs through a rulemaking process, culminating in parts 412, 414, 422, and 495 of title 42 of the Code of Federal Regulations. The regulations governing the Medicaid EHR incentive programs are located at 42 C.F.R. §§ 495.300, *et seq*. The federal regulations expressly describe the "state's role." 42 C.F.R. § 495.312(c). In implementing the HITECH Act, "the State determines the provider's eligibility for the EHR incentive payment under subparts A and D of this part and approves, processes, and makes timely payments using a process approved by CMS." *Id.* Although administered by states, the federal government funds entirely the Medicaid EHR incentive payments "to Medicaid providers… to encourage the adoption and use of certified EHR technology." 42 U.S.C. § 1396b(a)(3)(F).

On October 2, 2011, the California Legislature directed the Department to "establish and administer the Medi-Cal EHR Incentive Program for the purpose of providing federal incentive payments to Medi-Cal providers for the implementation and use of electronic health record systems." Cal. Welf. & Inst. Code, §§ 14046-14046.8. California Welfare and Institutions Code section 14046.1 requires the Medi-Cal EHR Incentive Program to "be administered in accordance with the State Medicaid Health Information Technology Plan, as developed by the department and approved by CMS." Likewise, California Welfare and Institutions Code section 14046.2 states

4

that "[u]pon receipt of all necessary federal approvals, and in accordance with the State Medicaid Health Information Technology Plan, the department shall accept applications from, and make incentive payments to, eligible professionals and facilities." On December 3, 2010, the Department submitted its first draft of the State Plan to CMS. After substantial discussions and several revisions of the State Plan, CMS ultimately approved the State Plan on September 30, 2011, and it went into effect on October 1, 2011. Providers demonstrate eligibility for incentive payments by filing attestations showing that they meet the HITECH Act and any state requirements and adopting, implementing, or upgrading to a certified EHR system, followed by meaningful use of that system. 42 C.F.R. §§ 495.20, 495.22. States issue direct payments based on the attestations to providers. 42 U.S.C. § 1396b(t).

The HITECH Act establishes the formula for calculating the amount of incentive payments to qualifying healthcare providers:

> The Medicaid share computed under this subparagraph, for a Medicaid provider for a period specified by the Secretary, shall be calculated in the same manner as the Medicare share under section 1395ww(n)(2)(D) of this title for such a hospital and period, except that there shall be substituted for the numerator under clause (i) of such section the amount that is equal to the number of inpatient-bed-days (as established by the Secretary) which are attributable to individuals who are receiving medical assistance under this subchapter and who are not described in section 1395ww(n)(2)(D)(i) of this title. In computing inpatient-bed-days under the previous sentence, the Secretary shall take into account inpatient-bed-days attributable to inpatient-bed-days that are paid for individuals enrolled in a Medicaid managed care plan (under subsection (m) or section 1396u-2 of this title).

42 U.S.C. § 1396b(t)(5)(C). The formulation of the required calculation is not optional; the statute provides that the payments "shall be calculated" according to the dictates of the federal HITECH Act. *Id.* The size of each healthcare provider's incentive payment is linked to the size of the Medicaid population that provider serves under the HITECH Act through a modified version of the Medicaid Share calculation defined at 42 U.S.C. § 1395ww(n)(2)(D). *Id.* HITECH's modified Medicaid Share calculation is obtained by dividing the sum of "inpatient-bed-days" attributable to Medicaid and Medicare eligible individuals by the product of the total number of "inpatient-bed-days" for the relevant period and the estimated total charges for the relevant period. *Id.* The

statute expressly provides that the "inpatient-bed-day" definition is "established by the Secretary." *Id.*; *see also Little Co. of Mary Hosp. & Health Care Centers v. Shalala*, 994 F. Supp. 950, 959 (N.D. Ill. 1998), *aff'd*, 165 F.3d 1162 (7th Cir. 1999) ("That definition expressly authorizes the Secretary to decide how to calculate inpatient-bed-days").

On July 28, 2010, CMS issued a series of comments and responses related to its final rule implementing the HITECH Act. *Medicare and Medicaid Programs; Electronic Health Record Incentive Program*, 75 F.R. 44314-01. In those comments, CMS explicitly addressed how inpatient-bed-days should be calculated, in particular whether non-covered or unpaid bed days should be included in the "inpatient-bed-day" calculation:

> Comment: One commenter objected that, for purposes of the Medicare inpatient day count in the Medicare share, we appeared to be proposing to use only paid Medicare days. **This commenter argued that all eligible Medicare days should be counted in order to reflect a hospital's true Medicare utilization.** The commenter also maintained that the statute's reference to days "attributable to individuals with respect to whom payment may be made under part A" requires inclusion of all days when a beneficiary was eligible for Medicare, on the grounds that this language "does not require actual payment by Medicare." The commenter further noted that the other factor in the numerator of the Medicare share fraction requires inclusion of all patient days associated with individuals enrolled in a Part C Medicare Advantage plan, and maintained that there "would be no rational basis for Congress to include all enrolled Part C days, quite clearly regardless of whether they are paid, but to limit part A days to those paid by Medicare."
>
> Response: **We assume that, by the term "unpaid" Medicare days, the commenter is referring to days provided to Medicare entitled beneficiaries for which the services are non-covered**, such as the cases in which a beneficiary has exhausted coverage of inpatient hospital services, or in which the services are not covered under a national or local coverage determination. **We do not agree with the commenter that these days ought to be included in the count of "inpatient-bed-days * * * attributable to individuals with respect to whom payment may be made under part A." Indeed, we believe that the best reading of this statutory language suggests the opposite of what the commenter maintains: In cases of non-covered days, payment may not be made under Part A, and therefore these days should not be included in a count of days "attributable to individuals with respect to whom payment may be made under part A."** We agree with the commenter that the language for the other factor in the numerator of the Medicare share fraction ("inpatient-bed-days attributable * * * to individuals who are enrolled with a MA organization under Part C") is more inclusive. However, we must assume that the difference in the statutory language is meaningful. **Therefore, we are finalizing our proposal**

> **not to include days provided to Medicare entitled beneficiaries for which the services are non-covered in the count of Medicare inpatient days.** It is important to note that we do include such "non-paid" days for purposes of other Medicare payment provisions, where it is appropriate to do so under the governing statutory provisions. For example, for purposes of the Medicare DSH adjustment the relevant statutory language requires inclusion of days associated with individuals who are "entitled" to benefits under Medicare Part A, rather than days for which "payment may be made under part A."
>
> After consideration of these comments, we are finalizing our proposals with regard to the data to be used to determine the "inpatient bed-days * * * attributable to individuals with respect to whom payment may be made under part A" in the numerator of the Medicare share fraction. Accordingly, we will derive this information from Worksheet E-1, Part II, line 2 of the pending Medicare cost report, Form CMS-2552-10, which is defined as the sum of lines 1 and 8 through 12 in column 6, Worksheet S-3, Part I of the pending cost report. As we have just discussed, we are revising the cost report data sources from which we are deriving this information in order to be consistent with the statutory requirement. We are also revising § 495.104(c)(4)(ii)(A)(2) of the regulations to clarify this point.

*Id.* (emphases added). These CMS comments make clear that CMS interprets the HITECH Act to limit payment for inpatient bed days to those days covered or paid by Medicare. As Cal. Welf. & Inst. Code § 14046.1(b) makes clear, the remit of the state in implementing the HITECH Act does not include an independent interpretation of the incentive payment calculation and which datapoints should be included.

**C.     The Parties' Dispute.**

The manner in which EHR incentive payments are calculated under the HITECH Act is the crux of the parties' dispute. Plaintiffs contend that the "inpatient-bed-days" referenced in 42 U.S.C. § 1396b(t)(5)(C) include all Medicaid inpatient bed days, both paid or covered and unpaid or not covered. Defendants counter that "unpaid bed day" is not a term of art in the Medicaid context and appears nowhere in the statutes or regulations governing the EHR Program. Defendants argue that Plaintiffs improperly included unpaid bed days in their EHR Incentive calculations. Defendants contend that the Department properly discovered – through audits - overpayments to Plaintiffs as a result of incorrect calculations based on all inpatient bed days and thus properly sought to recoup the overpayments. Plaintiffs counter that Defendants exceeded their statutory authority in conducting audits; however, Defendants point out that either a state or CMS may conduct audits and related procedures under the permissive language of 42 C.F.R. § 495.312 ("At

7

the State's option, CMS conducts the audits and handles any subsequent appeals, of whether eligible hospitals are meaningful EHR users on the States' behalf").

Pursuant to 42 U.S.C. § 1983, Plaintiffs challenge the Department's audit adjustments as a retroactive impairment of contract under Article I, Section 10 of the United States Constitution and as a violation of their Due Process rights under the Fourteenth Amendment. (Dkt. 43 ¶¶ 100-104, 105-115.) Plaintiffs further seek an order compelling the Department to comply with its ministerial duties under California Code of Civil Procedure § 1085 and a writ of administrative mandate to set aside the final administrative decisions made by the Department pursuant to either California Code of Civil Procedure § 1094.5 or California Code of Civil Procedure § 1085. (*Id.* ¶¶ 116-134.) Defendants removed these actions to federal court based on original jurisdiction under 28 U.S.C. § 1331. (*Id.* ¶ 32.) Plaintiffs argue that the Court has supplemental jurisdiction over their state law claims. (*Id.*)

Defendants move for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 45.) Defendants argue that the Court lacks subject matter jurisdiction over these actions because Plaintiffs have not stated a case or controversy against Defendants. (*Id.*) Further, Defendants argue that Plaintiffs' claims under 42 U.S.C. § 1983 are barred by sovereign immunity. (*Id.*) Substantively, Defendants argue that Plaintiffs' other claims all fail as a matter of law. (*Id.*) Plaintiffs counter that the Court has subject matter jurisdiction because Defendants' interpretation of a federal law is at issue and that sovereign immunity does not apply to their section 1983 claims because they are seeking prospective declaratory and injunctive relief. (Dkt. 51.) Plaintiffs also defend the merits of their other claims. (*Id.*)

**DISCUSSION**

**A.  Legal Standards.**

The standard applied on a Rule 12(c) motion for judgment on the pleadings is the same as that applied on a motion to dismiss under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, all factual allegations in the complaints are accepted as true and the pleadings are construed in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court

need not accept as true unreasonable inferences or conclusory allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*), (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

**B.     Analysis.**

    **1.     Subject Matter Jurisdiction.**

The Court lacks subject matter jurisdiction over this action because Plaintiffs have failed to state a case or controversy against Defendants. The HITECH Act is a federal statute supported by federal regulations and entirely funded by the federal government. 42 U.S.C. § 1396b. Defendants are all state actors charged with implementing but not interpreting the federal statute. The federal regulations supporting the HITECH Act explicitly confine the state's role to implementation and even subject the state's plans for implementation to approval by the CMS. 42 C.F.R. § 495.312(c). In California's implementation plan, the Department has only 5 areas of discretion in implementing the HITECH Act, all of which were approved by CMS and none of which include interpretation of the calculation for incentive payments or correct data for that calculation. *See* Cal. Welf. & Inst. Code § 14046.1.

The HITECH Act makes clear that, as part of the incentive payment calculation, "inpatient-bed-days" is a term whose meaning is to be "established by the Secretary" of Health and Human Services, which oversees CMS. 42 U.S.C. § 1396b(t)(5)(C). CMS has established a definition of "inpatient-bed-days" in its interpretation of the HITECH Act. In its comments on the final rule implementing the HITECH Act, CMS expressly addressed Plaintiffs' argument here that "inpatient-bed-days" should include unpaid or non-covered days and rejected it. 75 F.R. 44314-01. Plaintiffs' disagreement is therefore with CMS – a federal actor – interpreting a federal

9

1  statute. Defendants are state actors who were merely charged with implementing the federal
2  statute as interpreted by CMS and disbursing a pool of entirely federal funds. As state actors,
3  Defendants cannot be liable to Plaintiffs for what is essentially a federal rule promulgated, albeit
4  indirectly implemented, by a federal decisionmaker. To the extent Plaintiffs do have a case for
5  misinterpretation of language of the HITECH Act, such a case would be against a federal
6  defendant. No federal defendant is sued here, so there is no federal subject matter jurisdiction
7  over the actions.

8  Plaintiffs attempt to salvage their claims by arguing that the HITECH Act and the final rule implementing it "unambiguously require inclusion of all inpatient bed days in the Medicaid Share numerator," and that state Medicaid agencies have "sole responsibility" to determine eligibility under the act, citing 42 C.F.R. § 495.312(c). However, as discussed above, the State's implementation of the HITECH Act is confined to a limited process approved by CMS. See Cal. Welf. & Inst. Code § 14046.1. The HITECH Act makes clear that the key term that forms the basis for the parties' dispute, "inpatient-bed-day" is to be determined by a federal administrator, the Secretary of Health and Human Services. 42 U.S.C. § 1396b(t)(5)(C). Moreover, CMS has issued explicit commentary in adopting its final rule implementing the HITECH Act addressing and rejecting Plaintiff's interpretation. As the Court discussed with the parties at oral argument, the question of subject matter jurisdiction here turns on the dispute over the meaning of "inpatient-bed-day." Because the Court finds that "inpatient-bed-day" is a term defined and interpreted by federal actors, rather than state actors, there is no state action to form a colorable basis for Plaintiff's claims against the state.

22  At oral argument and in their supplemental briefing, Plaintiffs cite *Tinoco v. Belshe*, 916 F. Supp. 974, 983-84 (N.D. Cal. 1995), for the proposition that a federal defendant is not necessary when an interpretation of Medicaid is at issue because 42 C.F.R. § 431.250(b)(2), which interprets the Medicaid Act, requires the federal government to provide full federal financial participation pursuant to a court order interpreting the act. This case is inapposite for several reasons. Procedurally, *Tinoco* involved a third-party suit by the California Department of Health Services to bring the United States into the lawsuit. The court declined to bring in the United States on

10

1  ripeness and lack of redressable injury, rather than the case or controversy argument presented by
2  the parties here. 916 F. Supp. at 983-84. Additionally, the state plan at issue in *Tinoco* involved a
3  consent decree issued by another court requiring the treatment of State Disability Insurance as
4  income under the Social Security Act. *Id.* at 977. The state plan at issue expressly allowed the
5  state the "authority to make rules," and the *Tinoco* court held that the challenged provisions
6  created a "methodology […] based on the state plan rather than on considerations of federal law
7  alone." *Id.* at 982.

In these cases, the EHR incentive program under the HITECH Act is distinct from the Social Security Act interpretation at issue in *Tinoco*. The HITECH Act creates a program distinct from the Medicaid Statute; indeed, the very provision the parties are in conflict over provides a modified definition of the Medicaid Share. 42 C.F.R. § 431.250(b)(2), which describes payments for services "within the scope of the Federal Medicaid program and made under a court order," therefore does not apply to the HITECH Act. And here, the HITECH Act creates a complete methodology for calculation of EHR incentive payments that does not allow for interpretation or rulemaking by the states, which are limited to implementation under narrow plans approved by CMS.

Plaintiffs also cite *California Medical Association v. Kizer*, 1988 WL 235547, at *5 (E.D. Cal. May 17, 1988), which is similarly distinguishable because it involved a third-party claim against the United States dismissed for lack of concrete injury based on future failure to provide full federal financial participation.

Because the federal act at issue here does not leave any interpretive role to the state actors charged with implementing it, Plaintiffs have not stated a claim against those same state actors based on what they argue is a faulty interpretation of the act. The Court lacks subject matter jurisdiction over Defendants.

### 2. Sovereign Immunity.

In addition, California is immune from suit through Defendants on the basis of its sovereign immunity. The Eleventh Amendment establishes:

11

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"This language expressly encompasses only suits brought against a State by citizens of another State, but" the Supreme Court has long "held that the Amendment bars suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Thus, "[t]he Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (citing *Papasan*, 478 U.S. at 276).

A state's immunity from suit under the Eleventh Amendment extends to the state's agents or instrumentalities. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment."); *see also Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 941 (9th Cir. 2019), *cert. denied sub nom. Boyd v. California Pub. Utilities Comm'n*, 140 S. Ct. 2645, 206 L. Ed. 2d 715 (2020). "When the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials" or instrumentalities "are nominal defendants." *Edelman*, 415 U.S. at 663 (citation omitted). States retain immunity from suit even in actions brought under 42 U.S.C. § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment precludes such suits unless a State has waived its immunity or Congress has abrogated its immunity under § 5 of the Fourteenth Amendment. *Id.* "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance." *Id.* The immunity of a State in this context also extends to state officials acting in their official capacity. *Id.* at 71.

An Eleventh Amendment challenge does not raise the issue of a court's subject matter jurisdiction. "The Eleventh Amendment […] does not automatically destroy original jurisdiction.

1   Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity

2   defense should it choose to do so." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389

3   (1998).   Thus, the Eleventh Amendment operates as an affirmative defense to suit and "a personal

4   privilege that the state may waive." *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 760

5   (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999).  Defendants have

6   invoked their Eleventh Amendment defense in these cases.  (Dkts. 25, 33.)

7   However, the doctrine of *Ex Parte Young* establishes an exception to the Eleventh

8   Amendment prohibition.  "Under *Ex Parte Young* and its progeny, a suit seeking prospective

9   equitable relief against a state official who has engaged in a continuing violation of federal law is

10  not deemed to be a suit against the State for purposes of state sovereign immunity." *In re Ellett*,

11  254 F.3d 1135, 1138 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (Aug. 27,

12  2001) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  A suit is cognizable under *Ex Parte*

13  *Young* where "the underlying authorization upon which the named official acts is asserted to be

14  illegal," the alleged violation of federal law is ongoing, and the violation would be ended by

15  affording the relief sought.  *Papasan*, 478 U.S. at 277-78.  "Relief that in essence serves to

16  compensate a party injured in the past by an action of a state official in his official capacity that

17  was illegal under federal law is barred even when the state official is the named defendant." *Id.* at

18  278.

19  Here, Defendants are agents or instrumentalities of California.  California has not waived

20  its immunity to suit under 42 U.S.C. § 1983, *see Dittman v. California*, 191 F.3d 1020, 1025-26

21  (9th Cir. 1999), nor has it waived its immunity to suit in this particular case.  The *Ex Parte Young*

22  doctrine does not apply because Plaintiffs are in effect seeking retroactive monetary relief against

23  the state.  Although Plaintiffs argue that they are not seeking retroactive monetary relief as to their

24  section 1983 claims, but rather declaratory and injunctive relief only, they simultaneously seek

25  monetary relief from state coffers via their state law mandamus claim, over which they argue the

26  Court has supplemental jurisdiction.  Plaintiffs cannot hide the fact that they are seeking

27  retroactive monetary relief by smuggling it into these actions in the guise of a supplemental state

28  law claim.  At bottom, Plaintiffs seek financial recovery for an alleged past wrong from state

coffers, and that quest is squarely foreclosed by sovereign immunity.

### 3. Supplemental Jurisdiction.

Because the Court lacks subject matter jurisdiction over Plaintiffs' underlying federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3).

Similarly, because the Court dismisses these actions for lack of subject matter jurisdiction, the Court does not address the parties' substantive arguments under 42 U.S.C. § 1983 for violation of due process, abrogation of contract, and failure to comply with the Government Claims Act.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion for partial judgment on the pleadings. Finding a lack of subject matter jurisdiction, the Court DISMISSES all three actions.

**IT IS SO ORDERED**.

Dated: April 7, 2021

_____
SALLIE KIM
United States Magistrate Judge